**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| BUILDER'S RESOURCE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORESLAB STRUCTURES (CONN), INC., )<br>)<br>Defendant. )<br>) | Civil Action No.<br>07-40057-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS OR, ALTERNATIVELY, FOR A TRANSFER**
**(CORRECTED)**

**SAYLOR, J.**

This is a dispute concerning a subcontract on a construction project in New York City, with subject matter jurisdiction premised on diversity of citizenship. The matter is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss for lack of proper venue pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the motion to dismiss will be granted.

**I.   Background**

Plaintiff Builder's Resource, Inc. ("BRI"), is a Massachusetts corporation with a principal place of business in Rhode Island. Defendant Coreslab Structures (Conn), Inc. ("CSCI") is a Connecticut corporation with a principal place of business in Connecticut.

CSCI entered into a subcontract to perform precast concrete work on a construction

project in the Bronx, New York, in January 2006, known as the Mott Haven Substation project. The owner of Mott Haven is Consolidated Edison Company of New York, Inc., and the general contractor (with whom the subcontract was entered) was D'Onofrio General Construction Corp. of Brooklyn, New York.

CSCI further subcontracted some of the erection work to BRI on May 10, 2006. The erection work was required to be performed on-site at the Mott Haven Substation in New York. BRI contends that it performed all the work due and required and that it is still owed more than $2.2 million under the subcontract. CSCI has moved to dismiss for lack of jurisdiction or, in the alternative, to transfer the matter to New York.

## II.     Subject Matter Jurisdiction

As noted, subject matter jurisdiction in this matter is premised on diversity of citizenship. The complaint alleges only that plaintiff has "a place of business in Massachusetts" and that defendant has "a place of business . . . in . . . Connecticut," and thus does not allege either party's state of incorporation or principal place of business. *See* 28 U.S.C. § 1332(c)(1).

Although the First Circuit has not spoken directly to the issue,[1] every circuit to have considered the question is in accord: a plaintiff must *specifically* plead both the state of incorporation and the principal place of business of every corporate party. If it does not, the complaint is not sufficient to establish diversity. *See*, *e.g., Sanders v. Clemco Industries*, 823 F.2d 214, 216 (8th Cir. 1987); *Casio, Inc. v. S.M. & R. Co., Inc.,* 755 F.2d 528, 529-530 (7th Cir. 1985); *Nadler v. American Motor Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985); *Canedy v.*

---

[1] The only opinion by a district court in the First Circuit to consider the issue is in agreement. *See Alvarez Melendez v. Citibank*, 705 F. Supp. 67, 70 (D.P.R. 1988).

2

*Liberty Mut. Ins. Co.*, 126 F.3d 100, 103-104 (2nd Cir. 1997); *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); *District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.,* 797 F.2d 1041, 1043-1044 (D.C. Cir. 1986); *Achwoo Intern. Steel Corp. v. Toko Kaiun Kaish, Ltd.,* 840 F.2d 1284 (6th Cir. 1988).

Thus, at a minimum, plaintiff would be required to amend its complaint in order to avoid dismissal. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). Because, however, there appears to be no factual dispute as to the states of incorporation (Massachusetts and Connecticut, respectively) or the principal places of business (Rhode Island and Connecticut, respectively), it appears that the deficiency could be cured by amendment. Accordingly, the Court will consider the issue of the existence of personal jurisdiction.

### III.     **Personal Jurisdiction**

The exercise of personal jurisdiction over a defendant is only appropriate if it is both authorized by statute and consistent with the due process requirements of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5-6 (1979); *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc. v. Triple "C" Marine Salvage, Inc.,* 444 Mass. 122, 125 (2005) ("A Massachusetts court may acquire personal jurisdiction . . . when some basis for jurisdiction enumerated in the statute has been established").

> A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction. Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and quotations omitted).

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id.* at 50-51 & n.5. The "most conventional" and "most commonly used" of these methods is the "prima facie" standard. *Id.* at 51; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992).

In conducting that analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and "construe them in the light most congenial to the plaintiff's claim." *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 34 (1st Cir. 1998). The court then "add[s] to the mix facts put forward by defendants, to the extent they are uncontradicted." *Daynard,* 290 F.3d at 51. The prima facie method is appropriate here because the jurisdictional inquiry does not involve materially conflicting versions of the relevant facts. *See Foster-Miller,* 46 F.3d at 145-146 (describing the preponderance-of-the-evidence standard and likelihood standards).

BRI does not claim—nor, plausibly, could it claim—that this action arises in any way out of defendant's activities in Massachusetts. The issue, therefore, is not one of specific jurisdiction. Rather, BRI contends that CSCI is subject to general personal jurisdiction in this court based on its continuous and systematic activities in Massachusetts. CSCI contends that BRI is not subject

4

to personal jurisdiction under the Massachusetts long-arm statute and that it does not have the "minimum contacts" with Massachusetts required to satisfy Fourteenth Amendment due process requirements. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ([D]ue process requires that in order to subject a defendant to a judgment *in personam* . . . he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notice of fair play and substantial justice'").

For the reasons set forth below, the Court concludes that general personal jurisdiction may not be asserted over CSCI in this action, and therefore the action should be dismissed.

### IV.     General Personal Jurisdiction

As noted, general jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nonetheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Mass. School of Law,* 142 F.3d at 34; *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 138-39 (1st Cir. 2006). To establish general jurisdiction, the plaintiff must meet two criteria. First, there must be "continuous and systematic general business contacts" between the foreign defendant and the forum. *Swiss American*, 274 F.3d at 618 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)). This test "is considerably more stringent than that applied to specific jurisdiction questions." *Swiss American,* 274 F.3d at 619 (*citing Noonan v. Winston Co.,* 135 F.3d 85, 93 (1st Cir. 1998)). Second, plaintiff must show that the "exercise of jurisdiction would be reasonable." *Swiss American,* 274 F.3d at 619. That inquiry is based on various so-called "gestalt" factors used to determine the fundamental fairness of exercising jurisdiction. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990).

### A.     Statutory Authorization for Personal Jurisdiction

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(d), states in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . .
>
> (d)     Causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Section 3(d) is the statutory authorization for the assertion of general personal jurisdiction in Massachusetts. *See Noonan v. Winston,* 135 F.3d 85, 92-93 (1st Cir. 1998); *Landmark Bank v. Machera,* 736 F. Supp. 375, 384 (D. Mass. 1990) ("This provision . . . reflects the theory of general personal jurisdiction").

Plaintiff's claims are based entirely on breach of contract; there is no claim of tortious injury in the complaint. Accordingly, this claim does not meet the threshold requirement of "tortious injury in this commonwealth by an act or omission outside this commonwealth." Mass. Gen. Laws ch. 223A, § 3(d). *See LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 56 (D. Mass. 1997) (claim for breach of contract not a claim of "tortious injury" within the meaning of ch. 223A, § 3(d)). *Compare, e.g., Engine Specialties, Inc. v. Bombardier Ltd.,* 454 F.2d 527, 529 (1st Cir. 1972) ("tortious injury" requirement met by claim of tortious interference with contract). Accordingly, the claim does not fit within the terms of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(d), and is subject to dismissal on that basis.[2]

---

[2] There is no question that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth" within the meaning of ch. 223A, § 3(d).

B.     **Due Process Requirements**

Even assuming that the statutory requirements have been met, the exercise of general personal jurisdiction must also satisfy the Due Process Clause of the Fourteenth Amendment.  As noted, there must be "continuous and systematic general business contacts" between the defendant and the forum, and plaintiff must show that the exercise of jurisdiction "would be reasonable."  *Swiss American,* 274 F.3d at 618-19.

Plaintiff has submitted affidavit testimony stating the following concerning defendant's contacts with Massachusetts:  (1) defendant has put bid information concerning Massachusetts projects in the Dodge Report, a construction industry publication; (2)  defendant has undertaken construction projects in Waltham and Burlington, Massachusetts; (3)  it is plaintiff's "understanding" that defendant sends project managers to Massachusetts construction sites; and (4) defendant publishes a glossy brochure that states the company "spans the continent"; and (5) the brochure depicts a "Coreslab" project, a skyscraper in Boston, Massachusetts.  (M. Cardon Aff., ¶¶ 3-8).[3]

Plaintiff's evidence of defendant's contacts with Massachusetts do not support a finding of general jurisdiction.  General jurisdiction has not been found in situations involving comparable

---

[3] As to the brochure, the affidavit specifically states that it was ". . . prepared by Coreslab."  (M. Cardon Aff., ¶ 4).  This identification is vague, and plaintiff has not contradicted defendant's contention in its reply brief that this promotional material was prepared by another, albeit affiliated, corporation—Coreslab International, Inc.  For a non-party affiliate's commercial activities to be relevant to the personal jurisdiction analysis, "the factors that we must consider for purposes of piercing the veil separating two corporations in the liability context also inform the jurisdictional inquiry."  *Negron-Torres v. Verizon Communications, Inc.,* 478 F.3d 19, 26 (1st Cir. 2007) (*quoting United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1091 (1st Cir. 1992)).  There is a "presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary."  *Negron-Torres,* 478 F.3d at 27.  Plaintiff here has presented no evidence from which the Court could conclude that Coreslab International, Inc., exerts control over defendant.

(or greater) contacts than are presented here. *See, e.g., Noonan,* 135 F.3d at 93-94 (no general personal jurisdiction where a foreign corporation conducted regular and targeted business solicitations of Massachusetts companies, raised approximately $585,000 worth of business from a foreign company, and sent an employee into the forum to conduct work-related activities); *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 469 n.8; 470 (1st Cir. 1990) (no general personal jurisdiction where for ten years NHL provided league officials at exhibition hockey games, conducted scouting, provided television broadcasts, and sold products bearing the NHL logo in the forum state); *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216-217 (1st Cir. 1984) (no general personal jurisdiction where a foreign corporation advertised in trade journals that circulated in the forum, employed eight full-time sales representatives to work in the forum state, and sold products to wholesale distributors in the forum state); *Seymour v. Parke, Davis and Co.,* 423 F.2d 584 (1st Cir. 1970) (no general personal jurisdiction where a foreign corporation advertised in the forum and employed several salesmen in the forum state who disseminated product information and took product orders).

      Given the relatively high bar set by those cases, the activities of CSCI—which consists of work on two construction projects in Massachusetts, the solicitation of Massachusetts business in trade periodicals, and the apparent sending of employees into Massachusetts—simply do not amount to "continuous and systematic general business contacts" with the commonwealth. To be sure, the intrinsically temporary nature of construction work does not mean that a construction company's contacts with a foreign state must *always* be considered "limited" or "intermittent." *See Swiss American*, 274 F.3d at 620. But plaintiff has produced limited evidence concerning only two Massachusetts construction projects, with little else. Plaintiff states that this Court

should view defendant's motion as "disingenuous and highly misleading as to what Coreslab really does." But it is plaintiff's prima facie burden to produce evidence concerning the true nature of defendant's contacts with Massachusetts. This Court may not infer more numerous or extensive forum contacts from the evidence presented, particularly where plaintiff has not even alleged the existence of such contacts.

In short, plaintiff has simply not produced sufficient evidence of defendant's Massachusetts contacts for this Court to exercise general personal jurisdiction. That being the case, the exercise of personal jurisdiction would offend traditional notions of "fair play and substantial justice." *See Foster-Miller,* 46 F.3d at 150; *International Shoe,* 320 U.S. at 316. Having made this finding, the Court need not address whether the exercise of personal jurisdiction is reasonable in light of the "gestalt" factors. *Swiss American,* 274 F.3d at 619.

**V.    Conclusion**

For all the foregoing reasons, defendant's motion to dismiss this case is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 23, 2008